FILED

2016 Aug-29  PM 02:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **WILLIAM STRICKLAND,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NO.  2:14-CV-1810-SLB** |
| ) | |
| **CAROLYN  W.  COLVIN,  Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff William Strickland brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits [DIB].  After review of the record, the parties' submissions, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

**I.  <u>PROCEDURAL HISTORY</u>**

Mr. Strickland filed an application for a period of disability and DIB on October 24, 2012, alleging a disability onset date of January 28, 2011.  (Doc. 15-6 at R. 127; doc. 15-7 at R.152.)[1]  The application was denied initially on February 8, 2013.  (Doc. 15-4 at R.53-54; doc. 15-5 at R.58.)  Thereafter, Mr. Strickland requested a hearing before an Administrative

---

[1]Reference to a document number, ("Doc. __"), refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ("R.__").

Law Judge [ALJ], (*see* doc. 15-5 at R.63), which was held on February 10, 2014, (doc. 15-3 at R.28). Following the hearing, the ALJ found that Mr. Strickland had been disabled since January 28, 2011, the alleged onset date, through February 13, 2014, the date of the ALJ's decision. (Doc. 15-3 at R.22.)

On April 14, 2014, the Appeals Council sent Mr. Strickland Notice that it was reviewing the ALJ's decision, stating that it "plan[ned] to set aside the favorable hearing decision and issue an unfavorable decision finding you not disabled from January 28, 2011, the alleged onset date, through the date of the hearing decision." (*See* doc. 15-5 at R.113-14.) Thereafter, on July 29, 2014, it reversed the decision of the ALJ; this decision is the final decision of the Commissioner of Social Security in Mr. Strickland's case. (Doc. 15-3 at 1.)

Mr. Strickland filed an appeal in this court on September 23, 2014. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its]

judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)) (internal quotations and other citation omitted).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)).  "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

## A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability and DIB.  *See* 20 C.F.R. § 404.1520(a)(1)-(2); *see also Bowen v. City of New York,* 476 U.S. 467, 470 (1986).  "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

3

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."   42 U.S.C. § 423(d)(2)(A).

The specific steps in the evaluation process are as follows:

**1.  Substantial Gainful Employment**

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).  The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[2] 20 C.F.R. § 404.1572.  If the claimant is working and that work is substantial gainful activity,

---

[2]The regulations state:

(a) *Substantial work activity*.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or his age, education, and work experience.  20 C.F.R. § 404.1520(b).  "Under the first step, the claimant has the burden to show that [he] is not currently engaged in substantial gainful activity."  *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (2012).[3]

The Appeals Council found that Mr. Strickland had not engaged in substantial gainful activity since January 28, 2011, the alleged onset date.  (Doc. 15-3 at R.4-5.)

### 2.  Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  The regulations provide:  "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and

---

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***."  11th Cir. R. 36-2 (emphasis added).

are, therefore, not disabled.  We will not consider your age, education, and work experience."

20 C.F.R. § 404.1520(c).  "An impairment can be considered as not severe only if it is a

slight abnormality which has such a minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education, or

work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R.

§ 404.1521(a).  A complainant may be found disabled based on a combination of

impairments even though none of the individual impairments alone are disabling.  *Walker v.*

*Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523.  A claimant has

the burden to show that he has a severe impairment or combination of impairments.

*Reynolds-Buckley*, 457 Fed. Appx. at 863.

The Appeals Council found that Mr. Strickland "had the following severe

impairments:  obesity, degenerative disc disease of the cervical and lumbar spine,

degenerative [joint] disease of the knees, status post left knee replacement and hypertension."

(Doc. 15-3 at R.9.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine

whether the claimant's impairment meets or is equivalent to any one of the listed

impairments, which are impairments that are so severe as to prevent an individual with the

described impairment from performing substantial gainful activity.    20 C.F.R.

§404.1520(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings].

If the claimant's impairment meets or equals an impairment in the Listings, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d). The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The Appeals Council found that Mr. Strickland "did not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in [the Listings]." (Doc. 15-3 at R.9.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment or combination of impairments does not meet or equal the criteria of a Listing, the claimant must prove that his impairment or combination of impairments prevents him from performing his past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f). At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity [RFC] with the physical and mental demands of [the claimant's] past relevant work. 20 C.F.R. § 404.1560(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it." *Id*. (b)(1). If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled. *Id*. (e). The claimant bears the burden of establishing that the impairment or combination or impairments prevents him from performing past work. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

7

The Appeals Council found:

> The claimant's combinations of impairments resulted in an ability to perform light work as defined in 20 C.F.R. 404.1567(b).[4]  Specifically, the claimant could frequently lift and carry objects weighing up to ten pounds and occasionally lift and carry objects weighing twenty pounds; could sit for two hours in an eight-hour workday; and could stand and walk for six hours in an eight-hour workday with ordinary breaks.

(Doc. 15-3 at R.9 [footnote added].)  Based on the RFC, the Appeals Council found that Mr. Strickland could perform his past relevant work as a lock assembler.  (*Id.*)

Therefore, the Appeals Council found that Mr. Strickland "was not disabled as defined in the Social Security Act at any time from the alleged disability onset date, January 28, 2011, through the date of the Administrative Law Judge's decision, February 13, 2014." (*Id.*)

---

[4]The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

8

### 5.  Other Work in the National Economy

If the claimant establishes that he is unable to perform his past relevant work, the Commissioner must show that the claimant – in light of his RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. §404.1560(c)(1).   Because it found Mr. Strickland capable of performing his past relevant work, the Appeals Council did not discuss whether Mr. Strickland was capable of performing other work.

## B.  MR. STRICKLAND'S APPEAL

Mr. Strickland contends that the Appeals Council's decision that he is capable of performing light work is not supported by substantial evidence; specifically he contends that the conclusions draw by the appeals counsel regarding the medical evidence, the consultative examinations, and his credibility are not supported.  He also contends that the Appeals Council erred in finding that his past relevant work as a lock assembler was generally performed at the light exertion level.  The court disagrees.

As set forth above, on appeal this court "must affirm" if "the Commissioner's decision is supported by substantial evidence."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).   This court cannot "decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]"  *Id*. (quoting *Phillips*, 357 F.3d at 1240 n.8); *see also Johnson v. Harris*,

612 F.2d 993, 997 (5th Cir. 1980)("The reviewing court may not reweigh the evidence nor substitute its judgment for that of the Secretary.")(citations omitted).   Mr. Strickland's arguments ask the court to reweigh the evidence – to discount the evidence relied upon by the Appeals Council and to make inferences in favor of his claim of disability.   Such actions are not the province of this court.

### 1.  RFC for Light Work

Mr. Strickland contends that the Appeals Council's decision that he is capable of performing light work is not supported by substantial evidence.   He argues the Appeals Council erred in its consideration of the consultative examinations, his medical treatment records, and his credibility regarding his pain.   Based on the court's consideration of the record, the court finds the Commissioner's decision is supported by substantial evidence and, therefore, is due to be affirmed

### a.  Consultative Examinations

### i.  Dr. Richard Crittenden

With regard to the examination by Dr. Crittenden, the Appeals Council noted:

The claimant was evaluated by . . . consultative examiner, Richard Crittenden, M.D., in January 2013.  [(*See* doc. 15-8 at R.252.)]  The claimant's primary complaint was back pain and the claimant also reported bilateral knee pain. [(*Id*.)]   The claimant was noted to walk with a moderately antalgic gait, limping mildly, favoring either the right or left and did not use a cane.  [(*Id*. at R.253.)]  The claimant sat without apparent discomfort and was able to get on and off the examination table without difficulty.  [(*Id*.)]  The claimant was also able to bend over to remove (and replace) his shoes without apparent discomfort.  [(*Id*.)]  On examination, the claimant had full muscle strength in his upper and lower extremities, straight leg raise testing was negative and the

10

claimant had full range of motion along the lumbar spine and flexion of the knees was 110 and 120 respectively.  [(*Id*. at R.254-55.)]  Dr. Crittenden concluded that the claimant's knee and back pain were without any objective findings that would contribute to any functional limitations.  [(*Id.* at R.256.)]  He specifically opined that the claimant was not functionally limited in his ability to perform work-related activities such as sitting, standing, walking, lifting, carrying, handling, hearing, speaking or traveling.  [(*Id*.)]  The Administrative Law Judge gave this opinion "little weight" indicating that it was not consistent with her residual functional capacity assessment.  [(Doc. 15-3 at R.20.)]  This is not a basis to discount a medical opinion.  As explained in our rules, opinions are afforded weight based on a variety of factors, but must be supported by signs and laboratory findings, as well as consistent with the record as a whole (20 C.F.R. 404.1527).  Here, Dr. Crittenden's opinion is supported by his consultative examination, which was largely unremarkable, and is not inconsistent with the record as a whole.   Thus, we afford this opinion great weight (20 C.F.R. 404.1527).

(Doc. 15-3 at R.6.)

Mr. Strickland contends that Dr. Crittenden's report is the result of his bias against Mr. Strickland's claim for benefits.  (Doc. 17 at 6 ["Dr. Crittenden's primary goal appeared to be finding ways to discredit Mr. Strickland at every turn.  The exam appears so calculated to arouse suspicion against Mr. Strickland that its overall credibility suffers."  (internal citation omitted)].)  The court finds nothing in the report of his examination of Mr. Strickland to suggest that Dr. Crittenden's examination and findings were "calculated" to determine anything more than Mr. Strickland's physical impairments.  Certainly, Mr. Strickland has not pointed the court to any evidence of bias.  He does, however, argue with two findings in Dr. Crittenden's report.

First he argues that Dr. Crittenden erred in finding that no asssistive device was used, needed, or prescribed; he states, "In evaluating the need for an assistive device, Dr.

11

Crittenden remarked, 'None used or apparently needed.  None ever prescribed.'  However, Dr. Crittenden himself noted Mr. Strickland's antalgic gait, and the record itself reflects that Mr. Strickland was prescribed a cane during the rehabilitation period after the total knee replacement."  (Doc. 17 at 6.)  Specifically, Dr. Crittenden noted that Mr. Strickland had a mild limp/antalgic gait and that he did not use a cane.  There is nothing inconsistent in this statement and it certainly does not indicate Mr. Strickland needed a cane or other assistive device to ambulate effectively.  Moreover, the court notes the record includes a reference to Mr. Strickland's use of a walker while in the hospital recovering from left knee surgery, (doc. 15-8 at R.237); the court can find no reference to a prescribed cane.  Nevertheless, the record is clear that at the time of the consultative examination, Mr. Strickland was not using a cane or other assistive device to ambulate.

Mr. Strickland also argues, "Dr. Crittenden flatly refuse[d] to acknowledge the presence of severe degenerative arthritis in Mr. Strickland's right knee, simply because he did not detect any crepitus in his exam.  Dr. Crittenden is an internal medicine doctor, not an orthopedic surgeon, and his ability to hear, feel, or otherwise detect crepitus to such a specific degree as to substitute for the findings of an X-ray is suspect.  Indeed, an X-ray taken February 7, 2013 revealed tri-compartmental arthritis with loss of joint space in the right knee."  (Doc. 17 at 6-7 [internal citations omitted].)  To begin with, Dr. Crittenden stated:

> Bilateral knee pain without any objective findings that would contribute to a conclusion of functional limitations; and the complete absence of crepitus on active extension and flexion in the seated position is, to this practicing internal medicine examiner's opinion, inconsistent with severe degenerative arthritis

12

to the degree warranting a recommendation of surgery. Notably the complete absence of any detectable crepitus on active range of motion of his right knee is extremely unlikely in a joint with degenerative joint disease severe enough to warrant total joint replacement, as the claimant reports has been advised. Based on the records available, history given and the medical finding this examiner's opinion is that the claimant is not functionally limited in performing work related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling.

(Doc. 15-8 at R.256.) "Crepitus is . . . [a] clinical sign in medicine that is characterized by a peculiar crackling, crinkly, or grating feeling or sound under the skin . . . or in the joints. . . . Crepitus in a joint can indicate cartilage wear in the joint space." *Vinson v. Colvin*, No. 5:14-CV-00210-JEO, 2015 WL 1208649, *4 n.5 (N.D. Ala. Mar. 17, 2015)(citation and quotations omitted). Osteoarthritis or degenerative joint disease "mostly affects cartilage." *Brandon v. Astrue*, No. 1:09-CV-1004-AJB, 2010 WL 3781981, *4 n.13 (N.D. Ga. Sept. 22, 2010). Therefore, Dr. Crittenden's opinion regarding the medical significance of the lack of crepitus on movement does not appear to be facially unreasonable and Mr. Strickland has not presented any evidence or authority demonstrating otherwise.

Dr. Crittenden did not "flatly refuse[ ] to acknowledge the presence of severe degenerative arthritis in Mr. Strickland's right knee, simply because he did not detect any crepitus in his exam," as Mr. Strickland contends. (Doc. 17 at 6.) In fact, Dr. Crittenden stated specifically that his objective findings on examination and lack of crepitus on movement indicated Mr. Strickland's degenerative joint disease was not "severe enough to warrant total joint replacement." (Doc. 15-8 at R.256.) He did not refuse to acknowledge severe degenerative joint disease.

During Dr. Crittenden's examination, Mr. Strickland reported that he did not take any medications, including over-the-counter pain medications despite his allegations of persistent pain and the recommendation of a total knee replacement surgery.  (Doc. 15-8 at R.252-53.)  Dr. Crittenden observed that Mr. Strickland had "a moderately antalgic gait," he got "on and off the exam table without assistance or effect of discomfort," and he bent over to take his shoes off and to put his shoes on "without affective discomfort."  (*Id*. at R.253.)   His examination of Mr. Strickland's back showed that his lumbar range of motion was "entirely normal," he had negative straight leg raises, and his back was "entirely non tender with no palpable spasms." (*Id*. at R. 254-56.)   As to his knees, Dr. Crittenden found on examination that Mr. Strickland had "normal toe-heel walking, normal hopping, and [a normal] Romberg test;" his range of motion was limited in flexion; the right knee was "moderately tender;" he found "[n]o swelling, deformity, or warmth of the right knee;" and he found "no crepitus [whatsoever] on repeated active extensions in the seated position."  (*Id*.)   Based on his examination, Dr. Crittenden found Mr. Strickland had low back pain and bilateral knee pain that did cause functional limitations.  (*Id*. at R.256.)

The Appeals Council found, "Dr. Crittenden's opinion is supported by his consultative examination, which was largely unremarkable, and is not inconsistent with the record as a whole;" therefore, it "afford[ed his] opinion great weight."  (Doc. 15-3 at R.6.)  The court finds the Appeals Council's decision is supported by substantial evidence.

14

### ii. Dr. Rickless

With regard to the consultative examination performed by Dr. Rickless, the Appeals

Council noted:

> On November 1, 2011, the claimant underwent a consultative examination
> with Morton Rickless, M.D. and reported right knee and back pain. [(Doc. 15-
> 8 at R.246.)] On examination, the claimant was found to have mild scoliosis
> along his back, had difficulty squatting and standing on his heels and toes, and
> had some reduced motion of the left knee and some reduced sensation around
> the surgical site. [(*Id*. at R.247.)] However, the remainder of the examination
> was unremarkable. The claimant demonstrated full range of motion in all
> other joints, stability in both knees, could heel toe walk, was otherwise
> neurologically intact and straight leg raise testing was negative. [(*Id*.)] The
> claimant also had good grip strength, showed no difficulty using his shoulders,
> wrists or hands and muscle strength was normal in all groups. [(*Id*. at R.247-
> 48.)] Dr. Rickless assessed the claimant with obesity, hypertension, status post
> left knee replacement with an excellent result and right knee arthritis in the
> medial compartment and patella compartment. [(*Id*. at R.248.)] Based on his
> evaluation, Dr. Rickless offered the opinion that the claimant could sit and
> stand for reasonable periods, might have difficulty walking on uneven terrain,
> and lifting and carrying might be limited due to right knee pain, but the
> claimant could handle objects. [(*Id*.)]

> The [ALJ's] decision indicates that Dr. Rickless'[s] opinion was given "great
> weight" suggesting it was supportive of sedentary level exertion. [(Doc. 15-3
> at R.20.)] As explained in 20 C.F.R. 404.1567(a), sedentary work involves
> lifting no more than 10 pounds at a time and occasionally lifting or carrying
> articles like docket files, ledgers, and small tools. Although a sedentary job
> is defined as one which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties. Jobs are sedentary if
> walking and standing are required occasionally and other sedentary criteria are
> met. Dr. Rickless concluded that the claimant was able to sit and stand for
> reasonable periods. The only limitation to walking was on uneven terrain.
> These statements are not consistent with sedentary level exertion. Further,
> while he indicated that the claimant "might" be limited in lifting and carrying,
> Dr. Rickless did not specify the amount of weight the claimant would be able
> to lift and carry. Notably, on examination the claimant displayed full, normal
> functioning in his upper extremities and minimal abnormalities in the lower

extremities.  [(*Id*. at R.247-48.)]  These clinical findings suggest an ability to lift and carry more than docket files, ledgers and small tools, as well as an ability to stand and walk more than occasionally.

(Doc. 15-3 at R.5-6.)

Mr. Strickland contends the Appeals Council's "conclusion is a vague extrapolation of [Dr. Rickless's] very cursory exam report, and does not provide any specific observation or test result that could explain the rationale behind such a finding.  . . .  Indeed, [its] conclusion merely 'suggests' an ability to perform more than the basic sedentary baseline, but does not go beyond that."  (Doc. 17 at 5-6.)

Based on his examination of Mr. Strickland, Dr. Rickless noted Mr. Strickland had "[n]o limitation of range of motion of [his] right knee[ ]" and 0-100° flexion of his left knee; he had no cyanosis, clubbing, or edema in his lower extremities; he had "good stability medially and laterally;" he could walk heel to toe but had "difficulty squatting and standing on heels and toes;"[5] an x-ray of the right knee showed advanced medial compartment arthrosis and advanced patella femoral arthritis.  (Doc. 15-8 at R.247-48.)  Dr. Rickless opined Mr. Strickland –

> could sit for ***reasonable*** period of time.  He could stand for ***reasonable*** periods of time.  Walking on uneven terrain ***might*** be limited.  Lifting and carrying ***might*** be limited due to right knee pain.  He could handle objects.  No hearing or speaking limitations.  He ***might*** have long distance traveling limitations due to right knee pain.

_____

[5]Dr. Crittenden noted a limitation in Mr. Strickland's ability to squat; however, he found this limitation was due to obesity.  (Doc. 15-8 at R.254.)

16

(*Id*. at R.248 [emphasis added].)

The court agrees that Dr. Rickless's opinion is not a definitive opinion on Mr. Strickland's functional capacity.  However, it disagrees with Mr. Strickland's argument that the Appeals Council found that Dr. Rickless had determined, explicitly, that Mr. Strickland could perform a full range of light work.  Rather, the court reads the Appeals Council's decision as holding Dr. Rickless's imprecise functional limitations and lack of objective findings did not support a finding that Mr. Strickland was limited to sedentary work, as the ALJ had found.  (*Compare* doc. 15-3 at 5-6 *with id*. at R.20-21.)  This court finds that the Appeals Council's interpretation of Dr. Rickless's opinion as not limiting Mr. Strickland to sedentary work is reasonable and that a contrary conclusion is not compelled by the evidence.

Based on the foregoing, the court finds no reversible error in the Appeals Council's decision based on the consultative examinations.

### b.  Medical Treatment Evidence

With regard to the medical treatment evidence, the Appeals Council found:

The evidence shows that the claimant underwent left knee surgery in November 2007.  [(Doc. 15-8 at R.238-40.)]  This report indicates that the claimant previously had left knee surgery,[6] [(*id*. at R.239,)]though there are no other surgical records are in the current file related to the claimant's knees. The records also reflect a history of treatment for neck pain with an imaging study from September 2009 showing degenerative changes and spondylosis

_____

[6]The Operative Record of the 2007 knee surgery states that, during the surgery, the surgeon found "some moderate amount of scar tissue present in front of the knee fat pad region from its previous unicondylar knee replacement."  (Doc. 15-8 at R.239.)

along the cervical spine.[7]   In 2010, the claimant sought treatment for left wrist and thumb pain, was found to have mild degenerative changes in the carpal joints, and assessed with a sprain.   [(*Id*. at R.219-30.)]   There are no subsequent treatment records in the file.

(Doc. 15-3 at R.5 [footnote added; internal citations omitted].)

Mr. Strickland argues, "The Appeals Council's summary of the medical evidence of record is then conveniently worded so as to mask the severity of some of Mr. Strickland's medical conditions." (Doc. 17 at 3-4.)  He contends:

1.  The Appeals Council's discussion of his knee surgery in 2007 does not include reference to the details of the "extensive, complicated surgery."  (*Id*. at 4.)

2.  The Appeals Council failed "to mention that [his left wrist and thumb] pain was specifically aggravated by Mr. Strickland's work duties,[8] or that Mr. Strickland had previously undergone a left carpal tunnel release procedure on his left hand."  (*Id*. at 5 [citing doc. 15-8 at 13; footnote added].)

3.  The Appeals Council stated that Mr. Strickland had no treatment records after his 2010 treatment for left wrist and thumb pain, but he was seen by his knee surgeon in May 2010 for a right knee x-rays[9] and in September 2010 for as sprained ankle.  (*Id*. [citing doc. 15-8 at R.262].)

---

[7]Mr. Strickland contends that the Appeals Council "glossed over" his "neck pain." However, the medical records in support of his treatment for neck pain do not belong to plaintiff.  Although the record belongs to a "William Strickland," the patient is twenty years younger than the plaintiff and works as a pastor.  (*See* doc. 15-8 at R.214-15.)

[8]The injury to Mr. Strickland's wrist was diagnosed as a strain caused by an on-the-job injury.  (*See* doc. 15-8 at R.222-23.)  He first sought treatment for his wrist and thumb pain two weeks after his injury and he was released to return to regular work that day.  (*Id*. at R.222, R.229.)

[9]Mr. Strickland's treatment for his wrist injury occurred in August 2010, (*see id*. at R.222); therefore, x-rays in May 2010, (*see id*. at R.262), predate the treatment of his wrist injury.

The Eleventh Circuit has held that "there is no rigid requirement that the ALJ [or, in this case, the Appeals Council,] specifically refer to every piece of evidence in his decision, so long as the . . . decision, as was *not* the case here, is not a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211.  The treatment records that Mr. Strickland claims were ignored or misinterpreted by the Appeals Council do not form a basis for reversing the Commissioner's decision.  The records predate the consultative examinations by Drs. Rickless and Crittenden, they do not contradict the opinions of Rickless and Crittenden, and/or they refer to injuries unrelated to Mr. Strickland's long-term complaints of disabling pain.  Mr. Strickland does not explain how these records undermine the Appeals Council's decision. *See*, *e.g.*, *Parker v. Colvin*, No. 8:12-CV-1919-T-24, 2013 WL 3209443, *12-13 (M.D. Fla. June 24, 2013).

Given the findings of the consultative examinations, which occurred after these treatment records, the court finds that these specific medical treatment records do not support reversal of the Commissioner's decision.

### c. Credibility

With regard to Mr. Strickland's credibility, the Appeals Council found:

> In assessing the claimant's work-related limitations, the decision indicates that the claimant's allegations as to the nature, severity, and limiting effects of his impairments is generally credible.  [(Doc. 15-3 at R.20.)]  However, there are a number of inconsistencies in the record that undermine this finding.  The claimant is seeking disability benefits beginning January 28, 2011 based on his musculoskeletal impairments, yet in the claimant's application for benefits, he

indicated that he actually stopped working because his company closed down.[10]  [(Doc. 15-7 at R.151-52; *see also* doc. 15-3 at R.32.)]  This is inconsistent with an assertion of disability.  In addition, while the claimant testified to many  functional limitations at the hearing, [(doc. 15-3 at R.24, R.37),] the claimant advised Dr. Crittenden that he remained independent in his activities of daily living, was able to perform household chores, such as laundry, sweeping and vacuuming, did yard work, drove, and left his home every day for two to three hours at a time.  [(Doc. 15-8 at R.253.)]  These reports are similar to those documented in An Adult Functional Report completed in December 2012. [(Doc. 15-7 at R.168-70.)] These self-reported activities are inconsistent with the degree of limitation asserted at the hearing and instead suggest a greater ability to function.  Thus, we find the claimant's statements only partially credible.

(Doc. 15-3 at R.6-7 [footnote added].)

Mr. Strickland argues, "The Appeals Council has not provided an adequate explanation regarding [its] refusal to recognize Mr. Strickland as credible, much less identified any substantial evidence on this point." (Doc. 17 at 10.) The court disagrees. The Appeals Council found that Mr. Strickland's testimony regarding his functional limitations was inconsistent with his statements to Dr. Crittenden and in his Function Report.  It also found that Mr. Strickland's testimony that his knee pain limited his ability to perform any

---

[10]After receiving the Appeals Council's Notice, Mr. Strickland submitted a statement, in which he claimed he had not stopped working because the plant closed; he said:

I had talked to them on [account] of my knees.  [I] could not stand carrying the boxes and sitting for long periods of time.  I would have to take extra breaks. My work production was going down.  [I] couldn't keep my mind on my jobs. They let me stay on because they were going to close the plant.  I had thirty years with them.

(Doc. 15-7 at R.203.)

work was inconsistent with his statements that he had stopped working because the plant closed.  The court finds that the Appeals Council adequately explained its reasons for discounting Mr. Strickland's subjective testimony and its stated reasons are supported by evidence in the record.

"In determining whether substantial evidence supports [the Commissioner's] credibility determination, the question is not . . . whether [the Commissioner] could have reasonably credited claimant's testimony, but whether the [Commissioner] was clearly wrong to discredit it."  *Gowen v. Colvin*, No. 6:15-CV-00089-RDP, 2016 WL 1171183, *11 (N.D. Ala. Mar. 25, 2016)(quoting *Werner v. Commr. of Soc. Sec.*, 421 Fed. Appx. 935, 939 (11th Cir. 2011))(internal quotations and alterations omitted); *see also Brock v. Astrue*, No. 8:09-CV-803-T-TGW, 2010 WL 1402734, *1 (M.D. Fla. Apr. 7, 2010)("Under the substantial evidence test, 'findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.'" (quoting *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc ))). The court has reviewed the entire record and finds the Appeals Council was not clearly wrong in discrediting Mr. Strickland's testimony regarding the functional limitations caused by his pain.

### 2.  Past Relevant Work

The Appeals Council held:

The Administrative Law Judge found that the claimant was unable to perform his past relevant work. [(Doc. 15-3 at R.21.)] At the fourth step of the sequential evaluation process, we consider our assessment of the claimant's residual functional capacity and his past relevant work. If the claimant can still do the his past relevant work, we will find that the claimant [is] not disabled (20 C.F.R. 404.1520(a)(4)(iv)). Past relevant work is defined as work done within the last 15 years, that lasted long enough for the claimant to learn to do it, and was substantial gainful activity (20 C.F.R. 404.1565). In his Work History Report dated December 5, 2012, the claimant indicated that from April 1981 through March 2010, he worked for a hinge manufacturer, and from May 2010 through January 2011, the claimant worked for a company repacking locks. [(Doc. 15-7 at R.159-66.)] Earnings records reflect that during this period the claimant worked at the substantial gainful activity level. [(Doc. 15-6 at R.132-37.)] Thus, the above work is considered past relevant work because it was done within the last 15 years, lasted long enough for the claimant to learn to do it, and was performed at the substantial gainful activity level.

An individual will be found "not disabled" at step four of the sequential evaluation if he can perform his past relevant work as it was actually performed *or as generally performed in the national economy* (20 C.F.R. 404.1560(b)(2), emphasis added). At the claimant's hearing, a vocational expert clarified that the claimant worked as a lock assembler from 1997 through March 2010 at the hinge manufacturer. She further testified that accordingly to the Department of Labor's Dictionary of Occupational Titles,[11] the position of lock assembler is classified at unskilled, light level work (DOT Code 706.684-022), though performed by the claimant at the medium level of exertion. [(Doc. 15-3 at R.40.)] As the evidence of record shows that the claimant retains the ability to perform light level exertion as defined in 20

---

[11]The *DOT* [*Dictionary of Occupational Titles*] and its supplement, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO),* comprise a comprehensive listing of job titles in the United States, along with detailed descriptions of requirements for each job, including assessments of exertional levels and reasoning abilities necessary for satisfactory performance of those jobs. The Commissioner recognizes the *DOT/SCO* publications as authoritative, and routinely relies on them 'for information about the requirements of work in the national economy.'" *Gaspard v. Soc. Sec. Admin. Com'r*, 609 F. Supp. 2d 607, 612-13 (E.D. Tex. 2009)(quoting SSR 00-4p, 2000 WL 1898704, *2.

C.F.R. 404.1567(b), we find that despite his impairments the claimant was able to perform his past relevant work as a lock assembler from the alleged disability onset date through the date of the decision.

We considered the representative's final contention that vocational expert testimony is needed to determine if the claimant maintains the capacity to perform his past work as a lock assembler. [(Doc. 15-7 at R.208.)] However, as discussed above, the record already contains vocational expert testimony about the claimant's past relevant work. The Council is not establishing any non-exertional limitations. Therefore, there are no inconsistencies or conflicts between the residual functional capacity assessment established in this decision and the vocational expert's testimony about the claimant's past relevant work as generally performed in the national economy (Social Security Ruling 00-4p). As such, no further vocational evidence is required.

(Doc. 15-3 at R.7-8 [emphasis in original; footnote added].)

Mr. Strickland argues, "Even if Mr. Strickland were capable of performing light work, he could not return to his past work as generally performed in the economy. The vocational expert determined that this job was best classified by the DOT title 706.684-022 (Assembler, small products). However, according to the claimant's testimony and the information available regarding the plant he worked for, more appropriate classifications of the position would be either Assembler, Production Line (DOT notes that may be designated according to part assembled such as Door-Lock Installer) 809.684-010; or Door Assembler, 806.684-050, both of which are classified at Medium as performed in the general economy." (Doc. 17 at 10-11.)

Mr. Strickland described his job as "repacking door lock bodies. Taking the old lock body out and putting an updated lock body in." (Doc. 15-7 at R.160.) He also stated that he made new locks and keys for customers:

23

I would get an order and go to the computer.  Look up the order to get the key code.

.

. . .

Get my blank [keys] and start to cut them.  I would start pinning the cylinders and lock housing.  I would finish them and start taking the cylinders out of the handles and putting my cylinders in the door handles.  Relabel all the boxes with the customer numbers.  Go to the computer [and subtract out the parts and complete the order.

(*Id*. at R.161, R.166.)]  The occupational titles suggested by Mr. Strickland do not match the description of his job duties.  He did not fabricate and/or assemble wood or metal doors;[10] therefore, Door Assembler (DOT 806.684-050) is not appropriate.  He did not install door locks on any structural part;[11] therefore, the Assembler, Production Line (DOT 809.684-010)

---

[10]The DOT describes this job as:

Fabricates parts and assembles precut wood and metal doors for use in mobile homes, trailers, or prefabricated buildings:  Positions specified wood frame members in jig and nails or staples members together to form doorframe.  Packs insulation between frame members.  Marks and cuts sheet metal to conform to dimensions of doorframe, using ruler and powered shear.  Bends sheet metal to fit over doorframe, using handbrake.  Attaches metal panels to doorframe, using handtools or rivet gun.  Marks locations of window and lock on door, using templates, and cuts openings in door, using electric router or power shears.  Installs lock assembly and prefabricated window assembly in door, using handtools.  Marks positions of hinges on door, using template, and screws hinges to doors, using screwdriver.  May attach metal and rubber weather stripping for exterior doors.

806.684-050 Door Assembler, *Dictionary of Occupational Titles.*  This job is classified as "manual work, assembly large parts" in section 06.02.22 of SCO.

[11]The DOT describes this job as:

Performs any combination of following assembly line tasks to assemble

24

is not appropriate.  The vocational expert testified that Mr. Strickland's past relevant work

"would be lock assembler.  According to the DOT, [this work is] light, unskilled, [with a]

SVP of 2.  He indicated [his work as actually performed was] medium . . . with a

combination of sitting/standing and walking.  The DOT [is] 706.684-022."  (Doc. 15-3 at

R.40.)  The DOT provides the following description of the job of Lock Assembler (DOT

706.684-022 "Assembler, Small Products I"):

_____

> structural parts, such as metal sashes, doors, windows, and window screens,
> using handtools and portable power tools:  Assembles frame components, such
> as tops, bottoms, sides, panels, and molding in jigs or fixtures.  Smooths edges
> of components to obtain specified fit, using grinder or file.  Punches or drills
> holes for fastening, using hole punch or power drill.  Aligns holes and screws
> or bolts frame components together, using screwdriver or wrench.  Positions
> hardware, such as locks, hinges, catches, and swivels on frame and fastens
> hardware to frame, using screwdriver, nut runner, and hand riveter.  Cuts
> screens to specified size, using measuring jig and hand shears.  Positions
> screen over frame and secures screen in groove, using disk roller.  Spreads
> glue, putty, or plastic compound on frame and positions precut glass panes into
> frame.  Rolls plastic or metal spline into groove and trims excess spline, using
> knife, or crimps edges of groove to hold screen or glass in place, using
> crimping tool.  Assembles components of lock, such as bolts, washers, and
> spring.  Inspects workpiece to detect scratches or burs.  Positions workpiece
> in measuring jig to verify dimensions.  May lay out reference points for
> drilling holes in frame members, using template, rule, and square.  May cut
> channels and molding to specified length, using pinch cutter, shears, or cuttoff
> saw.  May cut glass to specified size, using glass cutter.  May be designated
> according to part assembled as Channel Installer (struct. metal); Door-Lock
> Installer (struct. metal); Frame Assembler (struct. metal); Hardware Installer
> (struct. metal); Kick-Plate Installer (struct. metal); Screen Installer (struct.
> metal); Spliner (struct. metal).

809.684-010 Assembler, Production Line, *Dictionary of Occupational Titles.*  This position
is included in the SCO 06.04.22 for "manual work, assembly large parts."

25

Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.

706.684-022 Assembler, Small Products I, *Dictionary of Occupational Titles.* The Vocational Expert's testimony and the DOT job description are consistent with Mr. Strickland's description of his job, and, under the Commissioner's regulations, the Appeals Council could rely of the vocational expert's testimony to support its decision that Mr. Strickland's past relevant work, as generally performed, was at a light exertional level. *See* 20 C.F.R. § 404.1560(b)(2)("We may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' . . . , to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.")

26

Under the circumstances, the court finds the Appeals Council's finding that Mr. Strickland is capable of performing his past relevant work as a lock assembler, as such work is generally performed in the national economy is supported by substantial evidence. Thus, as to the classification of his past relevant work, the decision of the Appeals Council is due to be affirmed.

The court has reviewed the entire administrative law record and it finds the decision of the Commissioner is supported by substantial evidence. Therefore, the Commissioner's decision to deny Mr. Strickland's claim for a period of disability and DIB will be affirmed.

## IV.  CONCLUSION

Based on the reasons set forth above, the decision of the Commissioner, denying plaintiff's claim for a period of disability and DIB will be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 29th day of August, 2016.

SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE